## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GAG Enterprises, Inc.,
   Plaintiff,

       v.

Leonard Rayford, et al.,
   Defendant.

**Civil Action No. 15-cv-00041 (CKK)**

## MEMORANDUM OPINION
(April 12, 2016)

Plaintiff GAG Enterprises, Inc. filed the Complaint in the above-captioned action on January 12, 2015 against Defendants Leonard Rayford and Jason Rayford, alleging a claim of breach of contract concerning a commercial property lease. *See* Compl., ECF No. [1]. Presently before the Court is Plaintiff's Revised Motion for Default Judgment against Defendant Jason Rayford. *See* ECF No. [18]. For the reasons stated below, the Court GRANTS Plaintiff's Revised Motion for Default Judgment and shall enter a JUDGMENT for Plaintiff against Defendant Jason Rayford in the amount of $107,119.73.

## I. BACKGROUND

Plaintiff's Complaint sets out the following allegations, which the Court takes as true for purposes of Plaintiffs' Motion for Default Judgment. *See Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F.Supp.2d 26, 30 (D.D.C. 2002).

On or about July 1, 2007, Jerry Dale Leonard ("Leonard") entered into a lease agreement (the "Lease Agreement") with Ace Check Cashing, Inc., whereby he let certain commercial property in Warminster, Pennsylvania (the "Subject Property") to Ace Check Cashing, Inc. Compl. ¶ 7. The Lease Agreement was for a ten-year term, beginning on July 1, 2007 and ending on June 30, 2017. Lease Agreement, Exhibit A to Complaint, at 1. The lease was a triple net

lease, which means that in addition to rent, Ace Checking Cashing, Inc. was responsible to pay net real estate taxes on the leased asset, net building insurance, and net common area maintenance. Compl. ¶ 9.   Under the terms of the Lease Agreement, Ace Check Cashing, Inc. was primarily responsible for the payment of all rents, but the non-payment of rent was guaranteed by an affiliate of Ace Check Cashing, Inc., CW Financial of PA, LLC, and its principals, Defendants Leonard Rayford and Jason Rayford.  *Id.* ¶ 9.

On June 19, 2009, Leonard died, and his Estate sold the Subject Property to Plaintiff.  *Id.* ¶ 12.  The sale included all rights to the Lease Agreement and collection of rents.  *Id.*  Following the sale, rent was paid pursuant to the Lease Agreement through the payment due for February 2013.  *Id.* ¶ 13.   After that point, however, the business operating out of the Subject Property closed, and the rent payable as of March 2013, and each month thereafter, has not been paid.  *Id.* The Lease Agreement provides, in pertinent part, that upon non-payment of the rents, or other events of default, the "rent for the entire unexpired term of the [Lease Agreement], as well as all other charges, payments and expenses" shall become immediately due.  *Id.* ¶ 14.  According to the Complaint, there is currently due and owing under the Lease Agreement the following sums:

- Rent for March, April, May, and June 2013 at $1350/month     $5,400.00
- Rent for July 2013 through June 2014 at $1390/month     $16,680.00
- Rent for July 2014 through June 2015 at $1430/month     $17,160.00
- Rent for July 2015 through June 2016 at $1470/month     $17,640.00
- Rent for July 2016 through June 2017 at $1510/month     $18,120.00
- Real Estate Taxes     $17,724.32
- Insurance     $8,000.00
- Water     $3,740.00
- Oil     $17,974.60
- Trash Removal     $4,800.00
- Fire Extinguisher     $700.00
- Electric     $13,930.00

**Total: $141,768.92**

*Id.* ¶ 15.

2

On January 12, 2015, Plaintiff filed this action, alleging that Ace Check Cashing, Inc. has ceased business operations, and as a result, Defendants Jason Rayford and Leonard Rayford are obligated under the guarantee of the Lease Agreement to make payment. *Id.* ¶ 21. Plaintiff's Complaint demands judgment against Defendants Leonard Rayford and Jason Rayford jointly and severally in the amount of $141,768.92, plus attorneys' fees and costs, and such other and further relief as the Court deems just and proper. *Id.* at 5.1

On February 26, 2015, Plaintiff filed an affidavit of service as to Jason Rayford. *See* ECF No. [8]. On March 17, 2015, after Jason Rayford failed to plead or otherwise defend this action, the Clerk entered an Entry of Default as to Jason Rayford. *See* ECF No. [12]. On November 24, 2015, the Court denied Plaintiff's initial Motion for Default Judgment by the Clerk against Jason Rayford. *See* Mem. Op. & Order, ECF Nos. [16], [17]. In its Order, the Court required Plaintiff, in its revised motion, to at a minimum:

> (1) provide a sworn affidavit from Plaintiff, or another party with personal knowledge of the circumstances alleged in this case, attesting under oath to the itemized damages incurred by Plaintiff as a result of the breach of the Lease Agreement; (2) include a detailed explanation as to the calculation of each of the itemized damages incurred by Plaintiff; (3) identify the specific provisions in the Lease Agreement that provide the basis for each of the itemized damages incurred by Plaintiff as rent due under the lease as well as for attorneys' fees and court costs; (4) include documentary evidence supporting a conclusion that Plaintiff in fact incurred the amount of damages alleged in Plaintiff's motion; and (5) include, as an exhibit to Plaintiff's revised motion, a clear and legible copy of the Lease Agreement.

Order (Nov. 24, 2015), ECF No. [16], at 1.

On December 29, 2015, Plaintiff filed its Revised Motion for Default Judgment against Defendant Jason Rayford. *See* Pl.'s Rev. Mot., ECF No. [18]. The Court notes that Plaintiff's Revised Motion complies with all of the requirements set forth in the Court's prior Order.

---

1 In the Court's Order issued on November 24, 2015, the Court dismissed Plaintiff's claims against Defendant Leonard Rayford without prejudice. *See* Order (Nov. 24, 2015), ECF No. [16], at 2.

## II. DISCUSSION

Plaintiff requests that the Clerk enter a default judgment against Defendant Jason Rayford under Rule 55(b)(2). *See* Pl.'s Rev. Mot. at 2. Under Rule 55(b)(2), the "determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F.Supp.2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Although the Court's entry of default against an absent defendant establishes the defendant's liability, the Court is required to make an "independent determination of the sum to be awarded." *Id.* (citing *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C.2001)). Accordingly, Plaintiff must prove its entitlement to the amount of monetary damages requested. *Id.* "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.* (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979)).

In its revised Motion for Default Judgment, Plaintiff seeks a default judgment in its favor and against Defendant Jason Rayford in the amount of $107,119.73, as well as prejudgment interest and post-judgment interest from the date of the judgment. The amount that Plaintiff seeks in its revised motion—$107,119.73—is a reduced amount from the sum due on the lease alleged in the Complaint—$141,768.92. Plaintiff, noting the expenses that it has incurred in this matter to date, indicates that it is seeking "only a portion of the amounts sought in the Complaint, which are based upon the information that was quickly available to it." Pl.'s Rev. Mot., ECF No. [18], at 3. Specifically, Plaintiff seeks a default judgment as to (1) unpaid rental payments, totaling $75,000.00, (2) unpaid "additional rents" under the lease—which include real estate taxes, utility costs, insurance, and attorneys' fees and costs incurred in this litigation—totaling

$32,119.73, (3) prejudgment interest, and (4) post-judgment interest from the date of the judgment.

### A. Plaintiff is entitled to recover $75,000 in unpaid rental payments due under the lease.

The Lease Agreement, which was for a ten-year term, provides for rent payments to commence on July 1, 2007, at the rate of $1,150.00 per month.  Affidavit of Glenn Goodman ("Goodman Aff."), ECF No. [18-1], at ¶¶ 7, 8; Lease Agreement at 1.[2]  The Lease Agreement further states that the monthly rental payment will increase by $40 on each anniversary of the Lease Agreement:  "rental of $1,150.00 per month for the first year with $40/month increase in monthly rental on each annual anniversary." Goodman Aff. at ¶ 9, Lease Agreement at 1. Section 14 of the Lease Agreement provides, among other things, that upon the failure to "pay in full when due any and all installments of rent and/or any other charge or payments herein reserved" the rent "for the entire unexpired balance of the term of the lease" shall become due. Goodman Aff. at ¶ 12.

According to the Affidavit of Glenn Goodman, the sole shareholder and owner of Plaintiff GAG Enterprises, Inc., monthly rental payments were paid pursuant to the Lease Agreement through February 2013.  *Id.* at ¶ 10.  However, Ace Check Cashing, Inc. closed its operation on the Subject Property, and failed to pay the rent due as of March 2013, and each month thereafter.  *Id.* at ¶ 11.  Because Ace Check Cashing, Inc. failed to pay the March 2013

---

[2] The Lease Agreement is attached as Exhibit "A" to the Goodman Affidavit.  *See* ECF No. [18-1].  The Lease Agreement has also been retyped and presented as a "true and correct rendition of the original Lease Agreement" as Exhibit "A" to Affidavit of Brett L. Messinger.  *See* ECF No. [18-2].

payment and each payment thereafter, and in consideration of the annual $40 increase of the rent

due, the total amount due for the term of the Lease, totaling $75,000, is as follows:

- Rent for March, April, May, and June 2013 at $1350/month        $5,400.00
- Rent for July 2013 through June 2014 at $1390/month            $16,680.00
- Rent for July 2014 through June 2015 at $1430/month            $17,160.00
- Rent for July 2015 through June 2016 at $1470/month            $17,640.00
- Rent for July 2016 through June 2017 at $1510/month            $18,120.00

**Total Unpaid Monthly Rent: $75,000**

Goodman Aff. at ¶ 13; Lease Agreement at § 4.

Accordingly, upon close review of the record, the Court finds that Plaintiff is entitled to

recover $75,000 in unpaid monthly rental payments due under the lease.

### B. Plaintiff is entitled to recover $32,119.73 in unpaid additional rent due under the lease.

As the Lease Agreement is a "triple net" lease, the monthly rental payment is the

minimum amount of rent due under the Lease Agreement.  *See* Lease Agreement at § 4.  Under a

"triple net" lease, the tenant is solely responsible for all of the costs relating to the asset being

leased in addition to the rent fee applied under the lease.  *See* Pl.'s Rev. Mot., ECF No. [18], at 5

n.2; Lease Agreement at § 4.[3]  Additionally, the Addendum to the Lease requires the tenant to

pay, as additional rent, the "costs of all sewer rental and water imposed against the premises."

Addendum at § 5.  It further requires the tenant to pay "the cost of all real estate taxes imposed

on the building on which the leased premises are a part."  *Id.* at § 6.  The Addendum also

requires the tenant to pay the cost of insurance premiums.  *Id.* at § 5, 13.  Moreover, the

Addendum provides that if the tenant breaches the terms of the Lease Agreement, the tenant shall

---

[3] The structure of this type of lease requires the tenant to pay for net real estate taxes on the leased assert, net building insurance, and net common area maintenance.  Pl.'s Rev. Mot., ECF No. [18], at 5 n.2; Lease Agreement at § 6.

pay, as additional rent, the "costs and expenses incurred by the Landlord, including attorneys

fees, put to curing any defaults, of the Tenant and/or Guarantors[.]"  *Id.* at § 11.

Plaintiff has provided extensive documentary evidence—including billing records, copies

of checks, invoices, and an affidavit from Glenn Goodman, Plaintiff's sole shareholder and

owner—that details the amounts that have been incurred by Plaintiff as additional rent, which

has not been paid by Tenant.  The amounts due under the lease as additional rent are as follows:

| Description | Support for Amount | Amount |
|---|---|---|
| Real Estate Taxes (2012) | Goodman Aff. at Exhibit "B" | $1120.79 |
| Real Estate Taxes (2012) | Goodman Aff. at Exhibit "B" | $3220.46 |
| Real Estate Taxes (2013) | Goodman Aff. at Exhibit "B" | $3285.29 |
| Real Estate Taxes (2013) | Goodman Aff. at Exhibit "B" | $1120.79 |
| Real Estate Taxes (2015) | Goodman Aff. at Exhibit "B" | $3527.98 |
| Real Estate Taxes (2015) | Goodman Aff. at Exhibit "B" | $1120.79 |
| Electric Bill 7/24/15 | Goodman Aff. at Exhibit "B" | $258.39 |
| Electric Bill 4/27/15 | Goodman Aff. at Exhibit "C" | $198.01 |
| Electric Bill 12/26/14 | Goodman Aff. at Exhibit "C" | $260.98 |
| Sewer Bill 10/2/15 | Goodman Aff. at Exhibit "D" | $281.60 |
| Check for Sewer Bill 1/20/14 | Goodman Aff. at Exhibit "D" | $240.57 |
| Check for Sewer Bill 7/14/14 | Goodman Aff. at Exhibit "D" | $208.88 |
| Check for Sewer Bill 10/11/12 | Goodman Aff. at Exhibit "D" | $188.30 |
| Check for Sewer Bill 1/10/13 | Goodman Aff. at Exhibit "D" | $201.53 |
| Check for Sewer Bill 4/16/13 | Goodman Aff. at Exhibit "D" | $240.23 |
| Check for Sewer Bill 7/13/13 | Goodman Aff. at Exhibit "D" | $221.62 |
| Heating Oil 2/26/14 | Goodman Aff. at Exhibit "E" | $821.99 |
| Heating Oil 3/9/15 (with check) | Goodman Aff. at Exhibit "E" | $517.30 |
| Check for Heating Oil 12/29/13 | Goodman Aff. at Exhibit "E" | $712.35 |
| Check for Heating Oil 1/20/14 | Goodman Aff. at Exhibit "E" | $655.47 |
| Check for Heating Oil 11/29/13 | Goodman Aff. at Exhibit "E" | $756.93 |
| Check for Heating Oil 2/10/14 | Goodman Aff. at Exhibit "E" | $851.11 |

(Continued . . .)

| Check for Heating Oil 3/31/14 | Goodman Aff. at Exhibit "E" | $595.85 |
| Trash | Goodman Aff. at Exhibit "F" | $86.52 |
| Insurance (2015-2016) | Goodman Aff. at Exhibit "G" | $1827.00 |
| Insurance (2014-2015) | Goodman Aff. at Exhibit "G" | $2025.00 |
| Attorneys' Fees (Dec. 2014) | Messinger Aff. at Exhibit "B" | $2541.00 |
| Attorneys' Fees (Feb. 2015) | Messinger Aff. at Exhibit "B" | $1976.00 |
| Attorneys' Fees (March 2015) | Messinger Aff. at Exhibit "B" | $693.00 |
| Attorneys' Fees (April 2015)[4] | Messinger Aff. at Exhibit "B" | $1242.00 |
| Service of Process | Messinger Aff. at Exhibit "C" | $1122.00 |
| | **TOTAL:** | **$32,119.73** |

Pl.'s Rev. Mot., ECF No. [18], at 6-7.

Accordingly, upon close review of the record, the Court finds that Plaintiff is entitled to recover $32,119.73 in unpaid additional rent due under the lease.

### C.  Plaintiff is not entitled to recover prejudgment interest.

In Plaintiff's Revised Motion for Default Judgment, Plaintiff appears to include a one-line request for prejudgment interest. *See* Pl.'s Rev. Mot., ECF No. [18], at 7 ("[Plaintiff] seeks a default judgment in its favor and against Defendant Jason Rayford in the amount of $107,119.73 prejudgment interest[.]").  However, Plaintiff does not identify any provision in the Lease Agreement, or the Lease Addendum, indicating that Plaintiff is entitled to prejudgment

---

[4] The Court notes that the attorneys' fees and court costs incurred by Plaintiff are reasonable. According to detailed billing records submitted by Plaintiff, the charged attorneys' fees were for routine work related to the drafting and filing of the Complaint, service of the Complaint and summons, the drafting and filing of the motion for entry of default against Jason Rayford. The Court further notes that the majority of the work performed by Plaintiff's counsel as to the Motions for Default Judgment were not charged, as a courtesy.  Accordingly, the award of attorneys' fees for the work performed on those motions is minimal.

The Court also notes that the lease provides that the Landlord is entitled to recover all "costs and expenses incurred by the Landlord, including attorneys fees, put to curing any defaults, of the Tenant and/or Guarantors[.]"  Lease Agreement at § 11. The Court finds that Plaintiff is entitled under this provision to recover the reasonable attorneys' fees and court costs that have been identified in the Plaintiff's submissions.

interest.  Furthermore, the Court has not found any such provision through its own examination of the submitted materials.

"The determination of whether prejudgment interest should be awarded is within the discretion of the district court and is subject to equitable considerations." *McClam v. D.C.*, 808 F.Supp.2d 184, 191 (D.D.C.2011).  Considering the equities in this case, the Court finds that an award of prejudgment interest would not be appropriate.  Plaintiff has offered no equitable justification for why prejudgment interest should be awarded in this case, nor has it pointed to a provision in the Lease Agreement stating that Plaintiff is entitled to prejudgment interest under the agreement.

Accordingly, in an exercise of its discretion, the Court shall not include pre-judgment interest to Plaintiff as part of the award issued by the Court.  *See Romero v. ITW Food Equip. Grp. LLC*, 118 F. Supp. 3d 349, 354 (D.D.C. 2015) (holding that the Court would not exercise its discretion to award prejudgment interest where Plaintiff had not produced evidence of an equitable justification for such relief).

### D.   Plaintiff is entitled to post-judgment interest from the date of judgment under 28 U.S.C. § 1961.

Finally, along with its request for prejudgment interest, Plaintiff includes a request for post-judgment interest.  *See* Pl.'s Rev. Mot., ECF No. [18], at 7.

Federal statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court[,]" and that "[s]uch interest shall be calculated from the date of the entry of judgment. . . ."  28 U.S.C. § 1961(a).  Application of Section 1961(a) is mandatory, not discretionary.  *See, e.g.*, *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 850 F. Supp. 2d 277, 287 (D.D.C. 2012).

Accordingly, Plaintiff is statutorily entitled to post-judgment at the statutory rate set by Section 1961(a).  *See* 28 U.S.C. § 1961(a).

### III.  CONCLUSION

For the reasons described above, the Court GRANTS Plaintiff's Revised Motion for Default Judgment and shall enter a JUDGMENT for Plaintiff against Defendant Jason Rayford in the amount of $107,119.73.

An appropriate Order accompanies this memorandum opinion.

                                           */s/*

**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE